**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DONNA M. SPRY, et al.,

                Plaintiff,

v.                                  CIVIL ACTION NO.   2:16-cv-01785

THE STATE OF WEST VIRGINIA, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are four Motions to Dismiss, filed separately by Defendants Colonel C. R. "Jay" Smithers, (ECF No. 7), Sergeant R. L. Frye, (ECF No. 9), Trooper Silas A. Belt, (ECF No. 11), and the West Virginia Department of Public Safety and the West Virginia State Police ("WVSP"), (ECF No. 13).   For the reasons that follow, Colonel Smithers and Sergeant Frye's motions are **GRANTED**.   The remaining two motions are **GRANTED IN PART** and **DENIED IN PART**.

        *I.*     *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Plaintiffs Donna Spry and Britney Spry are mother and daughter.   They bring this action seeking redress for the killing of their husband and father, Curly Spry, at the hands of the WVSP. The following facts are drawn from the Complaint and, for purposes of the Motions to Dismiss, are assumed to be true.

On January 29, 2014, Donna Spry called decedent Spry's doctor from their shared residence in Logan County, West Virginia.   Her husband had been threatening suicide and she

needed help.   Instructed by the doctor's staff to call 911, Ms. Spry called the Logan County 911 operator and reported that her husband was depressed over a death in the family and had not been taking his prescribed medication.   (Compl. ¶ 39.)   Ms. Spry requested an ambulance.   A short while later, the 911 operator returned a call to the Spry residence to advise Ms. Spry that WVSP officers had been dispatched to the home.   Ms. Spry told the operator that "her husband was delusional and crying."   (*Id. ¶* 38.)

Sergeant R. L. Frye, a WVSP trooper supervisor in Logan County, accepted the initial 911 dispatch.   Sergeant Frye forwarded the call to Trooper Silas A. Belt, who made his way to the Spry residence.   (*Id.* ¶¶ 39–40.)   Upon his arrival at the Spry home, Trooper Belt, along with an unnamed John Doe trooper, stood at the front stoop, yelled "West Virginia State Police!", opened the front door, and entered the home.   (*Id.* ¶¶ 44–45.)   Decedent Spry was present within, lying in bed with a handgun at his side.   (*Id.* ¶ 63.)   Ms. Spry and her seventeen-year-old daughter Britney were also present.   The troopers approached, armed with AR-15 assault weapons and outfitted in SWAT gear.   Decedent Spry's response to the arrival of the troopers is left unclear. The Complaint alleges that the troopers "react[ed] . . . with intimidation, which caused [decedent Spry] to fear them," and that by "point[ing] their . . . AR 15 style weapons at him," the troopers "escalated the volatility [of] the situation they created."   (*Id.* ¶ 49–50.)   Although the Complaint alleges that the troopers would later claim that decedent Spry "pointed a handgun" at them, it does not actually allege that he did so.   (*Id. ¶* 60.)

Whatever the decedent's reaction, which is not described further, the Complaint alleges that the troopers opened fire, shooting the decedent eleven times and killing him within 23 seconds of their entry into the home.   (*Id.* ¶¶ 45, 51.)   Decedent Spry was still in bed underneath the

2

bedcovering when he was shot and killed.   (*Id.* ¶ 54.)   His own firearm, which Plaintiffs allege had not been touched from the time the troopers arrived, remained beside him.

Immediately after the shooting, Trooper Belt turned to Donna Spry and, realizing she was still on the phone with the 911 dispatcher, forcibly took the phone and disconnected the call.   (*Id.* ¶ 57.)   Trooper Belt then instructed Ms. Spry and her daughter to exit the home while the troopers secured the scene.   Plaintiffs allege that they were not permitted to even grab their coats before they were forced out into the cold, where they stood for hours in freezing weather before being permitted reentry.

Plaintiffs bring eighteen claims for relief on their own behalf and on behalf of the decedent, challenging what they perceive as an unjustified and extreme law enforcement response to a mentally ill man.   The named defendants are Colonel Smithers, Sergeant Frye, Trooper Belt, the State of West Virginia, the WVSP, the West Virginia Department of Public Safety, and the unnamed John Doe trooper who participated in the shooting.[1]   Defendants Smithers, Frye, and Belt are named in their individual and official capacities.   Plaintiffs describe their claims as follows:[2]

Count I:   42 U.S.C. § 1983—Violation of Decedent Spry's Rights— Excessive Force;

Count II:   Violation of Constitutional Right to Not Be Deprived of Life without Due Process of Law Guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Art. 3, § 10 of the West Virginia Constitution;

---

[1] As agencies of the State of West Virginia, the West Virginia Department of Public Safety and the WVSP are not distinct entities for purposes of this lawsuit.   From henceforth, the Court refers to the State of West Virginia defendants as "the WVSP."

[2] The Complaint designates the causes of action as "claims for relief."   The Court will refer to them as "counts."   The explanatory description following each count is drawn verbatim from the Complaint.

Count III:      Violation of Constitutional Right to Not Be Subjected to Cruel and Unusual Punishment Guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Art. III, § 5 of the West Virginia Constitution;

Count IV:      Violation of Constitutional Right to Keep and Bear Arms Guaranteed by the Second and Fourteenth Amendments to the United States Constitution and Art. 3, § 22 of the West Virginia Constitution;

Count V:      Violation of Constitutional Right to be Free from Unreasonable Searches and Seizures Guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Art. 3, § 6 of the West Virginia Constitution— For Illegally Entering and Damaging Premises;

Count VI:      Violation of Constitutional Right to be Free from Unreasonable Searches and Seizures Guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Art. 3, § 6 of the West Virginia Constitution— For Illegally Seizing Plaintiff;

Count VII:      Violation of Constitutional Right to Not Be Deprived of Liberty without Due Process of Law Guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Art. 3, § 10 of the West Virginia Constitution;

Count VIII:      Violation of Constitutional Right to Enjoy Life and Liberty, and to Pursue and Obtain Happiness and Safety[,] Guaranteed by Art. 3, § 1 of the West Virginia Constitution;

Count IX:      Wrongful Death;

Count X:      Battery;

Count XI:      Wrongful Trespass;

Count XII:      False Arrest/Imprisonment;

Count XIII:      Intentional Infliction of Emotional Distress;

Count XIV:      Outrageous Conduct;

Count XV:      42 U.S.C. § 1983—Violation of Decedent Spry's Family Rights;

Count XVI:      42 U.S.C. § 1983;

Count XVII:      Negligent Hiring, Training, and Supervision; and

Count XVIII:  42 U.S.C. § 1983 Supervisor Liability.

Count I is brought against Trooper Belt and the unnamed "Trooper Doe 1."   Counts II through XVI are brought against the WVSP, Trooper Frye, Trooper Belt, and Trooper Doe 1.   Plaintiffs bring Counts XVII and XVIII against the WVSP.

Originally filed in West Virginia state court, Defendants removed this action on February 23, 2016, citing the Court's federal question jurisdiction.   There are four motions to dismiss pending, filed by Colonel Smithers, Sergeant Frye, Trooper Belt, and the WVSP.   Colonel Smithers moves to dismiss because apart from naming him as a defendant in its introductory paragraphs, the Complaint does not mention him.   Colonel Smithers' motion aside, the arguments in support of dismissal overlap considerably.   The WVSP and Trooper Belt move to dismiss Counts II through IX, XII, and XIV through XVI.   The WVSP also moves to dismiss Counts XVII and XVIII.   Sergeant Frye moves to dismiss each count alleged against him (Counts II through XVI).   Plaintiffs filed a response to Trooper Belt's motion and proceeded to copy their memorandum, nearly verbatim, in response to the other motions.[3]   Defendants filed a collective reply.[4]

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A complaint must contain only

---

[3] With each responsive and largely redundant memorandum, Plaintiffs exceeded the Court's 20-page limitation on supporting memoranda without receiving permission to do so.   Each memorandum grows progressively longer; Plaintiffs' response to Colonel Smithers' motion, filed last of the four, is 29 pages. Plaintiffs' counsel is advised to consult the Local Rules of Civil Procedure that govern practice in this Court and is hereby put on notice that the Court will strike future briefing not in compliance with the local rules.
[4] The parties' redundant briefing has frustrated and baffled the Court.   It is difficult to imagine why four briefs were necessary when one would have sufficed.   The parties are cautioned against repeating such inefficient briefing.

"a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   *Id.* at 570.   While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."   *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.   There, the Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly,* 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" . . . ).   Rule 8 . . . does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.   *Id.* at 556.

*Id.* at 678–79.   A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged."   *Id.*   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing][the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.

### III.   DISCUSSION

Defendants' asserted basis for removal is federal question jurisdiction, based upon Plaintiffs' assertion of constitutional claims under 42 U.S.C. § 1983.   Section 1983 is not itself the source of any substantive rights.   Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   "A federal civil rights claim based upon § 1983 has two essential elements: 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).   The Court applies this standard in testing the sufficiency of Plaintiffs' § 1983 claims.

Below, the Court considers the motions filed by the individual officers before proceeding to discuss the motion filed by the WVSP.

### A.   Colonel Smithers' Motion to Dismiss

Colonel Smithers moves to dismiss because Plaintiffs' Complaint does not include any claims or factual allegations against him.   Plaintiffs fail to offer any response to this straightforward assertion.   Their responsive brief is largely irrelevant, as Plaintiffs reproduce the memorandum filed in answer to Trooper Belt's unrelated motion to dismiss.   However, to their memorandum, Plaintiffs add this curious statement: they "does [sic] not object" to the dismissal of the "federal claims" against Colonel Smithers, provided that Plaintiffs be provided the opportunity to proceed against Colonel Smithers "in the appropriate court."   (ECF No. 24 at 7.) Plaintiffs offer no further explanation, but they appear to be confusing the rules governing Eleventh

7

Amendment immunity with Colonel Smithers' observation that he has not been charged in Plaintiffs' Complaint.   Because Plaintiffs never address the argument that there are *no* claims alleged against Colonel Smithers, whether based in federal law or not, it is impossible to ascertain the limits of any concession they offer.   Nevertheless, Plaintiffs' Complaint is devoid of any allegation against Colonel Smithers, and thus fails to satisfy the Rule 8 standard.   The Complaint against Defendant Smithers is **DISMISSED** in its entirety.

B.      *Sergeant Frye's Motion to Dismiss*

Sergeant Frye moves to dismiss Counts II through XVI.   His motion rests principally on the contention that as a supervisor not directly involved in the decedent's death, Plaintiffs allege insufficient facts to state any claim against him.   Sergeant Frye also sides with Trooper Belt in attacking the legal basis for many of Plaintiffs' claims.   As with their response to Colonel Smithers' motion, Plaintiffs respond to Sergeant Frye's motion by duplicating their response to Trooper Belt.   In doing so, Plaintiffs fail to articulate a response to this defendant's main argument.

After separating out the legal conclusions, the factual allegations against Sergeant Frye are as follows.   According to the Complaint, Sergeant Frye is supervisor of WVSP Troop 5 in Logan County, West Virginia.   (Compl. ¶ 15.)   On January 29, 2014, Plaintiffs allege that Sergeant Frye accepted the initial 911 call from the Logan County 911 emergency dispatcher.   (*Id.* ¶ 39.) Sergeant Frye then transferred the call to Trooper Belt for dispatch.   (*Id.* ¶ 40.)   These three facts are all that support fifteen federal and state causes of action against Sergeant Frye.   Quite plainly, Plaintiffs fail to allege that Sergeant Frye directly engaged in any unconstitutional or tortious

conduct.   This mandates the dismissal of the state tort claims alleged in Counts IX, X, XI, XII, XIII, and XIV.

On the § 1983 claims, perhaps Plaintiffs seek to impose liability on Sergeant Frye under a theory of *respondeat superior* or supervisory liability.[5]   Their allegations are insufficient under either theory.   Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.   *Respondeat superior* cannot be used to impart liability to a supervisory official under § 1983.   *Iqbal*, 556 U.S. at 676 ("[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").   This rule applies with equal force to alleged violations of West Virginia civil rights law.   Syl. Pt. 1, *Robinson v. Pack*, 679 S.E.2d 660 (W. Va. 2009) (adopting *Iqbal*'s holding to find that a supervisory police officer is only liable for his own actions and not those of his subordinates).

Since vicarious liability is inapplicable to § 1983 and related state law claims, a plaintiff must plead that a supervisor's own actions violate the Constitution.   *Iqbal*, 556 U.S. at 676; *see Deakins v. Pack*, 957 F. Supp. 2d 703, 761 (S.D. W. Va. 2013) ("A supervisor's mere knowledge of a subordinate's unconstitutional conduct is not enough. . . . Section 1983 liability may be imposed upon a supervisor only on the basis of purposeful 'violations of his or her supervisory responsibilities.'" (*quoting Iqbal*, 556 U.S. at 676)).   In *Shaw v. Stroud*, the Fourth Circuit set forth the elements necessary to establish such a claim for supervisory liability under §1983:

---

[5] Since Plaintiffs do not address the arguments raised uniquely by Sergeant Frye, they leave the Court guessing.

1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d 791, 799 (4th Cir. 1994) (citation omitted).

The question is whether Plaintiffs have pled allegations sufficient to support each of the *Shaw* elements. The answer is obviously no. The Complaint alleges only that Sergeant Frye directed Trooper Belt to respond to a distress call from a woman pleading for help on behalf of her suicidal husband. Further, the bald assertion that Trooper Belt was "not properly trained," which appears elsewhere in the Complaint, (Compl. ¶ 183), does not give rise to an inference that Trooper Belt posed a pervasive risk to the public or, more importantly, that Sergeant Frye knew of and was deliberately indifferent to such risk. The Court simply cannot piece together from these sparse allegations a plausible claim that Sergeant Frye's personal actions violated the constitutional rights of Plaintiffs or their decedent. The § 1983 claims alleged against Sergeant Frye must be dismissed.

     C.     *Trooper Belt's Motion to Dismiss*

Trooper Belt moves to dismiss Counts II through IX, Count XII, and Counts XIV through XVI, arguing for various reasons that Plaintiffs have failed to state valid legal claims. On the constitutional claims alleged in Counts V and VI Trooper Belt also asserts the defense of qualified immunity.

10

### i.   Counts II, III, and IV

Counts II, III, and IV allege violations of the decedent's federal and state constitutional rights.   Presumably, § 1983 provides the federal statutory authority for these counts.   All are based on the same core facts, namely, the shooting death of the decedent.   Trooper Belt moves to dismiss Counts II, III, and IV because they seek relief more appropriately addressed by Count I, a Fourth Amendment excessive force claim.   Plaintiffs provide no useful response to this argument.

Count II alleges a due process claim related to Plaintiffs' companion claim for excessive force.   Such a claim is not cognizable under these circumstances.   The Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."   *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).   In *Graham*, the Supreme Court held that where an explicit textual source of constitutional protection applies to physically intrusive government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim.   490 U.S. at 395; *see Vathekan v. Prince George's Cty.*, 154 F.3d 173, 177 (4th Cir. 1998) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." (citation and internal quotation marks omitted)).

Under *Graham*'s guidance, the Court may not entertain a due process claim where Plaintiffs allege a Fourth Amendment claim arising from the same abusive government conduct. *See Krein v. W. Va. State Police*, No. 2:11-cv-00962, 2012 WL 2470015, at *6 (S.D. W. Va. Jun.

11

27, 2012) (dismissing Fourteenth Amendment claim because "the textually specific Fourth Amendment protection preempts the more generalized substantive due process protection"); *see also Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (turning to an analysis of substantive due process in consideration of an excessive force claim only after finding that the Fourth and Eighth Amendments did not apply); *Love v. Salinas*, No. 2:11-cv-00361-MCE-CKD, 2013 WL 4012748, at *7 n. 5 (E.D. Ca. Aug. 6, 2013) ("Because Plaintiff's 'failure to protect' claim is based on the Eighth Amendment, no separate discussion of Plaintiff's substantive due process claim . . . is necessary."); *Brothers v. Lawrence Cty. Prison Bd.*, No. 06-1285, 2008 WL 146828, at *12 (W.D. Pa. Jan. 14, 2008) (finding an inmate did not state a cause of action for substantive due process where alternative constitutional amendments covered the conduct giving rise to his alleged violations).   The Court has no reason to believe that the West Virginia courts would apply a different rule in their construction of Article III, §10 of the West Virginia Constitution.   *See Krein*, 2012 WL 2470015 at *6 n.6 (finding plaintiff's due process claim under the West Virginia Constitution preempted by the Fourth Amendment excessive force claim). Because Plaintiffs' textually-specific Fourth Amendment claim affords her decedent ample protection, dismissal is appropriate on Count II.

Plaintiffs allege in Count III a violation of the Eighth Amendment's proscription against cruel and unusual punishment.   The Eighth Amendment "was designed to protect those convicted of crimes."   *Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) ("The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one convicted of a crime.").   In the absence of any allegation that the decedent was a convicted inmate, there is no basis for a claim under the Eighth Amendment.   Article III, § 5 of the West

Virginia Constitution, a counterpart to the Eighth Amendment, has been treated similarly.  *See generally State ex rel. Pingley v. Coiner*, 186 S.E.2d 220, 230 (W. Va. 1972) (merging analysis of Eighth Amendment and Article III, Section 5 to discuss cruel and unusual punishment in the context of prison confinement).   As Plaintiff does not allege the use of force against a convict, Count III will be dismissed.

In Count IV, Plaintiff asserts that "[t]he summary execution and killing of decedent Spry for possession of firearms in the privacy of his residence violated his right to keep and bear arms as provided in the Second and Fifth Amendments of the Constitution of the United States."[6] (Compl. ¶ 125.)   The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed."   The Supreme Court has affirmed the right of an individual to "possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 591 (2008).   More recently, the Supreme Court held the individual Second Amendment right recognized in *Heller* is "fully applicable to the States."   *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).   Still, the right is not absolute, and *Heller* recognized the continued restriction of certain traditional limitations on the right to bear arms.   To that end, the Supreme Court emphasized that the Second Amendment does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."   *Heller*, 554 U.S. at 626.

The present case does not involve direct interference with Second Amendment rights. Rather, Plaintiffs' Second Amendment claim rests on the police shooting itself.   Plaintiffs allege that Trooper Belt violated the decedent's Second Amendment rights when Trooper Belt entered

---

[6] As the Fifth Amendment does not guarantee a right to bear arms, the Court assumes the reference to the Fifth Amendment is a typographical error.

the home and shot the decedent, ostensibly because he aimed a weapon in Trooper Belt's direction. Plaintiffs do not cite a single case as authority for the proposition that the individual right to bear arms trumps a law enforcement officer's right of self-preservation.   They seem to invoke the Second Amendment as an additional, alternative means of challenging what they believe to be an unreasonable use of force on the part of Trooper Belt.   That use of force is properly subject to challenge under the Fourth Amendment's excessive force clause, not the Second Amendment. *See Andrews v. Flaiz*, No. 1:14 cv 623, 2014 WL 4925044, at *9 (N.D. Ohio Sept. 30, 2014) (finding that the Fourth Amendment, rather than the Second Amendment, provides the appropriate vehicle to challenge the seizure of weapons pursuant to a law enforcement search).   The Second Amendment does not apply to the facts presented, and Count IV must be dismissed.

> ### iv.     Count V

Count V alleges illegal entry and damage of premises in violation of the Fourth and Fourteenth Amendments and Article III, Section 6 of the West Virginia Constitution.   Trooper Belt contends that Plaintiffs fail to allege a plausible claim because exigent circumstances justified his warrantless entry into the Spry home.   Alternatively, he claims the protection of qualified immunity.

In the absence of consent or exigency, warrantless searches and seizures inside a private residence are presumptively unconstitutional under the Fourth Amendment.   U.S. Const. amend. IV; *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)).   One such exigency obviating the requirement of a warrant is the need to protect or preserve life.   *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (officers witnessing a brawl from outside the home did not violate the Constitution by forcing their way inside to break up the fight).

14

Under this emergency-aid exception, law enforcement may enter a home without a warrant if they "have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Id.* at 398. The need to rescue a suicidal occupant would certainly come within the parameters of this exception. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (noting that the court was not aware of "a single case indicating that an officer's attempt to rescue what the officer believes to be a suicidal person does not constitute exigent circumstances"). Article III, § 6 of the West Virginia Constitution has generally been construed in harmony with the Fourth Amendment. *See State v. Duvernoy*, 195 S.E.2d 631, 634 (W. Va. 1973).

Trooper Belt's argument is premised on his conclusion that he acted reasonably in entering the Spry home. But the Court cannot, at this stage, adopt this conclusion. Trooper Belt relies heavily on Donna Spry's allegation that she described her husband to the 911 dispatcher as "very suicidal." (Compl. ¶ 69.) However, the Court is unable to determine whether other salient information had also been conveyed to Trooper Belt—for example, that decedent Spry did not present a threat of harm to his wife or daughter. (*Id.* ¶ 75.) Whatever limited knowledge Trooper Belt had in his possession was filtered through the reports of Donna Spry, who alleges that she was present inside the home when Trooper Belt burst inside. (*Id.* ¶ 45.) Presumably, Ms. Spry could have responded to Trooper Belt's presence at the front door if given the chance. As alleged in the Complaint, Trooper Belt gave her no such opportunity—Trooper Belt arrived at the doorstep, shouted "West Virginia State Police!", and immediately proceeded through the unlocked door. (*Id.* ¶¶ 44–45.) The allegation that Ms. Spry was still on the phone with the 911 dispatcher at the time of Trooper Belt's arrival, thus providing a minute-by-minute account of the events

transpiring within, would also seem to cut against any need to rush into the home without permission.   (*Id.* ¶ 57.)   Too much at this stage is left uncertain.   For now, it suffices to say that Plaintiffs plausibly allege circumstances in which the manner of Trooper Belt's entry was unjustified.

For the same reason, Trooper Belt's qualified immunity defense is premature.   The defense of "[q]ualified immunity shields a government official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.   Qualified immunity is more than immunity from liability; it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   A government official asserting a qualified immunity defense bears the burden of proof and persuasion. *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir.2003).   "Ordinarily, the question of qualified immunity should be decided at the summary judgment stage."   *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005).

As explained above, Plaintiffs' Complaint alleges facts—all of which must be accepted as true—plausibly showing that Trooper Belt's warrantless and unconsented-to entry of the Spry residence violated Plaintiffs' clearly established Fourth Amendment rights.   This claim will thus

be permitted to proceed against Trooper Belt in his individual capacity.[7]   Trooper Belt's qualified immunity defense must be revisited another day.

Finally, the Court addresses a concern regarding this and each of Plaintiffs' surviving West Virginia constitutional claims.   Whether the West Virginia Constitution gives rise to a private right of action for money damages is a question of some dispute among West Virginia's federal courts.   In reliance on the West Virginia Supreme Court of Appeals' ("WVSCA") decision in *Harrah v. Leverette*, 271 S.E.2d 322 (W. Va. 1980), this Court has repeatedly held that claims for money damages are not available to remedy violations of Article III of the West Virginia Constitution.   *See Harper v. Barbagallo*, No. 2:14-cv-07529, 2016 WL 5419442, at *12–13 (S.D. W. Va. Sept. 27, 2016); *Howard v. Ballard*, No. 2:13–cv–11006, 2015 WL 1481836, at *4 (S.D. W. Va. Mar. 31, 2015); *McMillion-Tolliver v. Kowalski*, No. 2:13-CV-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014); *Smoot v. Green*, No. 2:13–10148, 2013 WL 5918753, at *4–5 (S.D. W. Va. Nov. 1, 2013).

The WVSCA has never addressed the issue directly.   In *Hutchison v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996), however, the WVSCA held that "[u]nless barred by [a recognized immunity], a private cause of action exists where a municipality or local government unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution."   *Id.* at 654.   The *Hutchison* court did not address whether its holding was limited to § 10 or, alternatively, applied to other rights enshrined

---

[7] As explained *infra*, "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983."   *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).   The Supreme Court has emphasized that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."   *Id.* at 25 (citation and internal quotation marks omitted).   Thus, Trooper Belt cannot be sued in his official capacity for money damages under § 1983.   *Id.* at 362–63.

in Article III.   At least one West Virginia federal court has suggested that *Hutchison* generally "recognizes a private right of action for violations of the West Virginia Constitution."   *Ray v. Cutlip*, No. 2:13–CV–75, 2014 WL 858736, at *3 n.1 (N.D. W. Va. Mar. 5, 2014) ("West Virginia recognizes a private right of action for violations of the West Virginia Constitution."); *see also Wood v. Harshbarger*, 2013 WL 5603243, at *6 (S.D. W. Va. Oct. 3, 2013) (finding plaintiff had alleged sufficient facts to state a claim under Article III, Section 5 of the West Virginia Constitution and reserving the question of whether monetary damages were an available remedy for another day).

Given its ruling in *Hutchison*, the Court suspects that the WVSCA would recognize a cause of action for money damages for the violation of other Article III rights.   *See, e.g.*, *Pruitt v. W. Va. Dep't of Public Safety*, 664 S.E.2d 175, 182–84 (W. Va. 2008) (finding that fact issues precluded the granting of summary judgment on state constitutional claims).   Given the unsettled state of the law, and noting that Plaintiffs have alleged facts sufficient to give rise to a plausible claim of unlawful entry, the Court allows their state constitutional claim to proceed.   **The parties are hereby put on notice, however, that the Court intends to certify the question to the West Virginia Supreme Court if Plaintiffs continue to proceed against Defendants under this theory of liability.**   The Court denies the motion to dismiss Count V.

*v.*   *Count VI*

Count VI centers on an alleged seizure of Donna Spry following the shooting of her husband.   The unconstitutional seizure allegedly occurred when Trooper Belt directed Ms. Spry to stand outside of her home while the troopers secured the scene.   Trooper Belt argues that

18

Plaintiffs have not sufficiently pled facts amounting to a seizure, or, alternatively, that the seizure was justified by exigent circumstances.

Though these allegations do not constitute a formal detention, Ms. Spry's Fourth Amendment rights were implicated by this treatment.   A witness to a police shooting may be "seized" for purposes of the Fourth Amendment "if, in view of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."   *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).   The seizure of such a witness must be reasonable; otherwise, it violates the Fourth Amendment.   *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006); *Figg v. Schroeder*, 312 F.3d 625 (4th Cir. 2002).   In judging reasonableness, courts look to "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty."   *Brown v. Texas*, 443 U.S. 47, 51 (1979) (citation omitted).

The Court finds that Donna Spry has sufficiently pled a seizure for Fourth Amendment purposes.   Ms. Spry alleges that she was forced outside in freezing weather, without a coat, while law enforcement secured the scene following her husband's shooting.[8]   (Compl. ¶¶ 57–59.)   Her telephone was confiscated and she was not permitted to approach the home.   The ordeal allegedly went on for "several hours." (*Id.* ¶ 59.)   It is unclear whether Ms. Spry had access to an automobile or whether she was explicitly prohibited from leaving the area.   Nevertheless, the fact that she was taking orders from the same law enforcement official that had just killed her husband, together with the shock of having witnessed the nightmarish incident, could reasonably have combined to

---

[8] It is unclear whether Plaintiff Britney Spry joins in this claim.   Count VI alleges an illegal seizure in the detention of Donna Spry only, but the facts as alleged in the Complaint indicate that Britney Spry was also ordered out of the home to wait in the cold.   (Compl. ¶ 58.)

create a situation where Ms. Spry did not feel free to leave.   Trooper Belt's claims are better left for summary judgment.   The West Virginia constitutional claim will advance along with the § 1983 claim, with the caveat noted *infra*.   The motion to dismiss Count VI is denied.

### ii.    Count VII

Plaintiffs allege in Count VII a violation of due process arising from facts identical to those forming the basis of the Fourth Amendment claim alleged in Count VI.   Trooper Belt moves to dismiss Count VII as he did Count II, arguing that Plaintiffs improperly rely on generalized notions of due process to seek redress for actions giving rise to a Fourth Amendment claim.   As explained above, the Fourth Amendment provides the proper rubric for analyzing Ms. Spry's unconstitutional seizure claim.   *Graham*, 490 U.S. at 395.   Count VII, a due process claim arising from the same facts, will be dismissed.

### iii.    Count VIII

Count VIII alleges a violation of the "right to enjoy life and liberty, and to pursue and obtain happiness and safety," enshrined in Article III, § 1 of the West Virginia Constitution. Trooper Belt claims that Article III, § 1 does not create a cause of action.   Plaintiffs do not even respond to this argument, much less provide authority to the contrary.   The Court agrees with Trooper Belt.   Section 1, entitled "Bills of Rights," "is a statement of the basic principle on which our entire democratic structure is founded,' and has not been applied in circumstances such as these."   *Krein*, 2012 WL 2470015, at *6 (quoting *Allen v. State Human Rights Comm'n*, 324 S.E.2d 99, 109 (W. Va. 1984)).   Plaintiffs' claim under Article III, § 1 of the West Virginia Constitution is hereby dismissed.

*viii.*    *Count IX*

Count IX alleges wrongful death predicated on negligence.   Trooper Belt moves for dismissal, arguing that he enjoys immunity from claims of negligence arising from acts undertaken within the scope of his employment.   The WVSCA has held:

> In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–1, *et seq.,* and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. Pt. 7, *Jarvis v. W. Va. State Police*, 711 S.E.2d 542 (W. Va. 2010).   Notwithstanding *Jarvis*, the WVSCA has also found that "whether an agent is 'acting within the scope of his employment' . . . is generally a question of fact for the jury."   *W. Va. Regional Jail and Correctional Facility Auth. v. A.B.*, 766 S.E.2d 751, 768 (W. Va. 2014).   Putting the issue of insurance coverage aside, a summary determination that Trooper Belt was acting within the scope of his employment would be premature under the facts alleged by Plaintiffs.   The motion to dismiss Count IX is denied.

*x.*    *Count XII*

Trooper Belt moves to dismiss Count XII, a false imprisonment claim, as time barred. Plaintiffs does not respond to this contention.

In West Virginia, the statute of limitations for false imprisonment claims is one year.   *See Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, --- S.E.2d ---, 2016 WL 6833116, at *12 (W. Va. Nov. 17, 2016) ("Numerous torts such as libel, defamation, false arrest, false imprisonment, and malicious prosecution take the one-year statute of limitations set forth in West Virginia Code § 55-2-12(c)." (citations and internal quotation marks omitted)).   Donna Spry alleges that she was falsely imprisonment on January 29, 2014.   Her false imprisonment claim, brought by lawsuit

21

initiated January 29, 2016, was one year too late.   The false imprisonment claim will be dismissed as untimely.

xi.   *Count XIV*

Next, Trooper Belt moves to dismiss Count XIV, a claim of "outrageous conduct." Trooper Belt contends that outrage is not a tort separate and distinct from the tort of intentional infliction of emotional distress which Plaintiffs allege in Count XIII.   Plaintiffs have no answer to this argument, and again, their silence is revealing.   West Virginia treats the torts of outrage and intentional infliction of emotional distress as the same cause of action.   *Philyaw v. E. Associated Coal Corp.*, 633 S.E.2d 8, 13 n. 7 (W. Va. 2006) (noting that intentional infliction of emotional distress is also known as the tort of outrage in West Virginia); Syl. Pt. 2, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998) (citation omitted) (finding that proof of "extreme and outrageous conduct" is an element of an intentional infliction of emotional distress claim). Plaintiffs' outrageous conduct claim is duplicitous.   Count XIV will be dismissed.

xii.   *Count XV*

Count XV alleges that Trooper Belt, among others, violated the substantive due process rights of Plaintiffs Donna and Britney Spry to enjoy the "love, companionship, society, comfort, services, and moral and financial support of the decedent."   (Compl. ¶ 176.)   Trooper Belt contends that this claim must be dismissed because Plaintiffs fail to allege that his wrongful conduct was "directly aimed at the parent-child relationship."   The few cases that Plaintiffs cite in response address parental liberty interests in the context of legislative action and have no application to the use of force by a law enforcement officer.   *See Moore v. City of E. Cleveland,*

431 U.S. 494, 503 (1977); *Smith v. Org. of Foster Families*, 431 U.S. 816, 845 (1977); *Pierce v. Soc'y of the Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923).

This circuit does not recognize a family's substantive due process claim for the loss of love and support of a family member. *Shaw*, 13 F.3d at 804–05 (citing *Rucker v. Hartford Cty.*, 946 F.2d 278, 283 (4th Cir. 1991), *cert denied*, 502 U.S. 1097 (1992)). In *Shaw*, a North Carolina highway patrolman shot and killed a man during a traffic stop and in the presence of the man's wife and children. *Id.* at 794. The family brought a § 1983 action, alleging that the patrolman violated their "substantive due process 'right' to enjoy the 'life, love, comfort, and support of their husband and father' without undue state interference." *Id.* at 796–97. The Fourth Circuit found that such a claim was not cognizable. The *Shaw* court relied upon *Valdivieso Ortiz v. Burgos*, 807 F.2d 6 (1st Cir. 1986), where the First Circuit distinguished "direct injury," which is directly aimed at the parent-child relationship, from "incidental injury," which is not. The Fourth Circuit went on to observe that "the United States Supreme Court has never held that the protections of substantive due process extend to claims based on governmental action which affects the family relationship only incidentally." *Id.* at 805 (citing *Ortiz*, 807 F.2d at 8.)

Following *Shaw*, district courts within the Fourth Circuit continue to dismiss due process claims brought by the surviving family of police shooting victims when the family members fail to allege that they, as opposed to the decedent, were targeted by police action. *Jones v. Prince George's Cty.*, No. AW–04–1735, 2005 WL 1074353, at *5–6 (D. Md. Apr. 28, 2005) (dismissing substantive due process claim brought by family members where the plaintiffs' pleading alleged only that the decedent was targeted by police shooting and failed to allege any direct physical injury to their persons); *Lee v. City of Richmond*, 3:12cv471, 2013 WL 1284323, at *5–6 (E.D.

23

Va. Mar. 27, 2013) (dismissing similar claim given dearth of allegations alleging an attempt by law enforcement to interfere with the parent-child relationship).

Plaintiffs allege that in an attempt to respond to the decedent's mental health emergency, Trooper Belt burst into their home and ultimately shot and killed the decedent.   There is no allegation of any direct attempt to affect the decedent's familial relationships and no allegation that Plaintiffs themselves suffered any physical injury as part of the events that transpired within their home.   The Court is loath to trivialize Plaintiffs' grief or the hardship brought about by the decedent's untimely death.   Nevertheless, the Court must find that this case presents the same type of "incidental" injury present in *Shaw*, which the Court is bound to follow and Plaintiffs make no attempt to distinguish.   Plaintiffs' substantive due process claim must fail.   Trooper Belt's motion to dismiss Count XV is granted.

> ### xiii.    Count XVI

Count XVI alleges another violation of § 1983, though Plaintiffs do not reference the constitutional provision upon which it rests.   Like Count I, this claim appears to be predicated on excessive force.   Trooper Belt argues that Count XVI is redundant and must be dismissed. Plaintiffs respond that Count XVI is a claim against the WVSP for inadequate training and supervision of Defendant Belt.   The assertion is curious since the header to Count XVI explicitly states that the claim is directed toward the WVSP, Sergeant Frye, Trooper Belt, and "Trooper Doe 1."   There are a number of such drafting anomalies in the Complaint, however, and in light of Plaintiffs' concession, the Court dismisses Count XVI as to Trooper Belt.   The sufficiency of this claim against the WVSP will be discussed below.

D.      *The WVSP's Motion to Dismiss*

The WVSP moves to dismiss Counts II through IX, XII, and XIV through XVI for reasons identical to those posed by Trooper Belt.   Further, the WVSP moves to dismiss Count XVII, a claim for negligent hiring, training and supervision, and Count XVIII, which alleges supervisory liability under § 1983.   With regard to these and all other §1983 claims, the WVSP also argues that as a state agency, it is not a suable "person" under § 1983.   *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989).

Plaintiffs' response is somewhat baffling.   Plaintiffs argue against dismissal of Counts XVII and XVIII, apparently contending that the WVSP is a supervisory official subject to liability under § 1983.   (ECF No. 23 at 25.)   In their subsequently-filed response to Colonel Smithers' motion, however, Plaintiffs appear to abandon the argument.   There, Plaintiffs write that they "does [sic] not object to the court dismissing the federal claims against Defendant[] West Virginia State Police," so long as Plaintiffs are allowed "an opportunity to proceed against the [WVSP] in the appropriate court."   (ECF No. 24 at 7.)   Plaintiffs appear to be confusing Eleventh Amendment sovereign immunity with personhood in the context of a § 1983 action.

Plaintiffs' contradictory arguments notwithstanding, the Court finds that the § 1983 claims against the WVSP, including the supervisory liability claims alleged in Counts XVII and XVIII, are deficient as a matter of law.   Section 1983 authorizes claims for relief against "persons" who act under the color of state law.   42 U.S.C. § 1983.   In *Monell v. Department of Social Services*, the Supreme Court held that municipalities and municipal officials sued in an official capacity are suable § 1983 persons.   436 U.S. 658, 690 (1978).   The Supreme Court later clarified that states, state agencies, and state officials sued in an official capacity cannot be sued for damages

under § 1983.   *Will*, 491 U.S. at 71.   The WVSP is not a municipality as Plaintiffs suggest, but a state agency falling under the holding in *Will*.   As such, each § 1983 claim against the WVSP must be dismissed with prejudice.[9]

With regard to the state law-based claims alleged in Counts II through IV, VII, VIII, XII, and XIV, the Court adopts the reasoning and findings made in Section III.C. of this Opinion.[10] Though the WVSP may be vicariously liable for any wrongful acts committed by Trooper Belt within the scope of his employment, *see Pruitt v. W. Va. Dep't of Public Safety*, 664 S.E.2d 175, 183 (W. Va. 2008), these particular claims are legally insufficient for the reasons previously discussed.   The Court thus finds that Plaintiffs fail to state a claim against the WVSP on Counts II, III, IV, VII, VIII, XII, and XIV.   The state-law claims alleged in Counts V, VI, IX, X, XI, and XIII against the WVSP will proceed for the time being.

---

[9] This includes the federal constitutional claims alleged Counts II, III, IV, V, VI, VII, XV, XVI, XVII, and XVIII.

[10] The Eleventh Amendment traditionally "bars citizens from bringing suits in federal court against their own states." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 291 (4th Cir. 2001).   A state may voluntarily waive its Eleventh Amendment immunity, however, and the Supreme Court has found waiver of Eleventh Amendment immunity where a state, having waived immunity from state law claims in state court, removes a state lawsuit to federal court.   *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002).   Under West Virginia law, sovereign immunity principles are inapplicable where a lawsuit seeks recovery only "up to the limits of the State's liability insurance coverage."   Syl. Pt. 1, *Blessing v. Nat'l Eng'g & Contracting Co.*, 664 S.E.2d 152 (W. Va. 2008) (citing Syl. Pt. 2, *Pittsburgh Elevator v. W. Va. Bd. of Regents*, 310 S.E.2d 675 (W. Va. 1983)).   Thus, *Lapides* counsels that by removing Plaintiffs' lawsuit to federal court, the WVSP waived Eleventh Immunity over those claims to which it has consented to suit in state court.   Plaintiffs' Complaint explicitly limits any potential recovery against the WVSP, and all defendants in their official capacities, to "the maximum limit of their liability insurance coverage."   (Compl. ¶ 6.)   WVSP addresses sovereign immunity in its briefing.   "[R]emoval to federal court," the WVSP writes, "is an implied waiver of the Eleventh Amendment."   (ECF No. 27.)   Between the well-recognized limitations on state sovereign immunity, the WVSP's removal to federal court, and the WVSP's tacit concession, the Court finds that the WVSP has waived any entitlement to the protections of the Eleventh Amendment in this case.

*IV.     CONCLUSION*

In sum, the Court **GRANTS** the motions to dismiss filed by Colonel Smithers, (ECF No. 7), and Sergeant Frye, (ECF No. 9).   The Complaint as to Colonel Smithers and Sergeant Frye is **DISMISSED WITH PREJUDICE**.  Trooper Belt's motion to dismiss, (ECF No. 11), is **GRANTED IN PART** and **DENIED IN PART**.   The Court **DISMISSES WITH PREJUDICE** Counts II, III, IV, VII, VIII, XII, XIV, XV, and XVI against Trooper Belt.   As to Counts V, VI, and IX against Trooper Belt in his individual capacity, Trooper Belt's motion to dismiss is **DENIED**.   The official capacity claims alleged in Counts V, VI, and IX against Trooper Belt are **DISMISSED WITH PREJUDICE**.   The WVSP's motion to dismiss, (ECF No. 13), is similarly **GRANTED IN PART** and **DENIED IN PART**.   The Court **DISMISSES WITH PREJUDICE** Counts II, III, IV, VII, VIII, XII, XIV, XV, XVI, XVII, and XVIII against the WVSP and further **DISMISSES WITH PREJUDICE** the § 1983 claims alleged in Counts V and VI.   The state constitutional claims alleged against the WVSP in Counts V and VI survive the motion to dismiss, along with Counts IX, X, XI, and XIII against the WVSP.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      February 1, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE